FILED

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

98 SEP
PM 12: 43
U.S. DISTRICT COURT
N.D. OF ALABAMA

KATHERINA THOMAS, et al.,          )
                                   )
     Plaintiffs,                   )
                                   )
vs.                                )     CV-97-AR-1284-E
                                   )
SHERIFF DARRELL DURHAM,            )
                                   )
     Defendant.                    )

Cho

**ENTERED**

SEP 1 7 1998

### MEMORANDUM OPINION

The above-entitled action is before the court on a motion for
summary judgment filed by defendant Sheriff Darrell Durham
("Sheriff Durham") in his individual capacity. Plaintiffs
Katherina Thomas ("Katherina" ) and Lorena Thomas ("Lorena") allege
that Sheriff Durham, in his individual capacity, deprived them of
their constitutional rights to be free from excessive force and
unlawful search and seizure, under the Fourth and Fourteenth
Amendments, and they bring suit pursuant to 42 U.S.C. § 1983.
Plaintiffs additionally allege negligence, wantonness, invasion of
privacy, trespass, conversion, outrageous conduct, and assault and
battery, all of which are claims invoking Alabama law. The
original complaint also named as defendants Cleburne County,
Alabama and Sheriff Durham in his official capacity. By this
court's order dated July 21, 1997, all claims were dismissed with

23

prejudice except those against Sheriff Durham in his individual capacity.

For the reasons hereinafter discussed, the court concludes that no genuine issues of material fact exist in regard to plaintiffs' remaining claims and that defendant's motion for summary judgment is due to be granted.

### I. Pertinent Undisputed Facts

The events leading to this lawsuit arose out of a long-standing feud between neighbors Melvin Thomas ("Melvin") and Tranzie Loveless and their families. At the time the relevant incidents occurred, Katherina, who is Melvin's wife, and Lorena, Melvin's daughter, both resided with Melvin in their house trailer in rural Cleburne County, Alabama. On April 2, 1996, Sheriff Durham and several deputies responded to a call from Tranzie Loveless' wife, reporting that Melvin had shot and wounded Mr. Loveless with a shotgun. Around 8:00 p.m. that evening, Sheriff Durham, along with several officers, arrived at the Thomas home and promptly arrested Melvin as he walked out of his barn to greet the arriving cars. Melvin was taken to the county jail. Katherina and Lori walked outside from the house trailer as the arrest occurred, and Katherina angrily demanded to be told what was happening.

According to plaintiffs, Sheriff Durham ordered some of his deputies to search the property, and several officers entered the

2                                      CV-97-AR-1284-E

barn.  After Katherina insisted that Sheriff Durham needed a search

warrant, she recollects that he called the officers out of the

barn.  However, when the Sheriff and his deputies refused to leave

the property, Katherina retrieved a shotgun and a box of shells

from inside the trailer.[1]  The officers drew their weapons, and

Sheriff Durham ordered them to fire upon her if and when she should

raise the shotgun to her shoulder.  After the officers and Lorena

pleaded with her to put down the gun, she dropped the weapon.  One

of the officers arrested and handcuffed Katherina without further

incident.

Sheriff Durham "hugged" and "comforted" Lorena, who was a

minor at the time, and told her that she would have to leave the

property. *Def.'s Exh. 2, Depo. Of Lorena Thomas, p. 31.*  Lorena was

accompanied by several officers into the trailer, and they followed

her as she gathered personal items.  Lorena admits she did not

witness the officers searching any area of the apartment, opening

---

[1]

Plaintiffs' assert that the shotgun barrel was "breached" when
Katherina emerged from the trailer, meaning that the gun was opened
for loading and could not immediately be fired.  Therefore, they
argue, Katherina posed no immediate threat to the Sheriff or the
other officers.  In the Sheriff's recollection, the gun barrel was
not in the breached position when Katherina first retrieved it, but
only after she began to load the gun with shells.  In this court's
view, whether the gun was breached or not is irrelevant.  The fact
that Katherina would require a minimal amount of time to snap the
barrel into firing position before aiming and shooting – a process
requiring perhaps a second – in no way lessens the impermissible
threat she presented.

3                                    CV-97-AR-1284-E

any doors, or seizing any items while they were accompanying her inside.

Before she left to stay with nearby relatives, Lorena voluntarily signed a waiver allowing the officers to search her car. Katherina's car was also searched. No items were seized from either car.

Believing it prudent to have a search warrant for the trailer and barn, Sheriff Durham completed an application and affidavit for a search warrant, and a warrant was issued the same evening at 10:45 p.m. and executed at 11:10 p.m. Multiple weapons and a considerable stock of ammunition were seized from the Thomas property. To date, none of the seized items have been returned.

Katherina was charged with reckless endangerment. She later pled guilty to the lesser charge of menacing.[2]

## II. Summary Judgment Standard

Rule 56 F.R.Civ.P. states in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

---

[2]

Melvin Thomas was convicted of the attempted murder of Tranzie Loveless and is currently serving a 30-year prison sentence.

Rule 56(c), Fed.R.Civ.P.   In addition, the Eleventh Circuit has observed that "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law."   *Turnes v. AmSouth Bank, N.A.,* 36 *F.3d 1057, 1061 (11th Cir. 1994).*   Sheriff Durham has invoked Rule 56.

### III.  State Law Claims

Plaintiffs' claims under Alabama state law fail for multiple reasons.  Even if this court were to find that no immunity existed for Sheriff Durham, each and every one of plaintiffs' state law claims against him would fail, because plaintiffs have not provided evidence which is legally sufficient to make a prima facie case on their claims.  For the reasons discussed below, this court finds that the foregoing conclusion is unnecessary because Sheriff Durham is entitled to sovereign immunity under the Alabama Constitution of 1901 and is immune to all of plaintiffs' state claims.

### Sovereign Immunity Defense

In  *McMillian  v.  W.E.  Johnson,  101  F.3d  1363(11th Cir.1996)("McMillian"),* cited by Sheriff Durham, the Eleventh Circuit noted that Alabama appellate decisions have presented no clear answer to the question of whether sheriffs, in their individual capacities, are protected by sovereign immunity under

5

Article I § 14 of the Alabama Constitution. *Id., at 1365.*
Nevertheless, the court in *McMillian* found itself bound by its own
earlier decision in *Tinney v. Shores*, 77 F.3d 378 (11th
*Cir.1996)("Tinney")*, stating "the holding of the case is clear:
under Alabama law, a claim against an Alabama sheriff in his
individual capacity is barred by the doctrine of sovereign
immunity." *Id.*

In *Tinney*, the Eleventh Circuit did follow the Alabama Supreme
Court's understanding of immunity under Article I, § 14 of the
Alabama Constitution, to the extent that "the only exception to a
sheriff's immunity from suit are actions brought to enjoin the
sheriff's conduct." *Id., at 383,* citing *Alexander v. Hatfield, 652
So.2d 1142, 1143 (Ala.1994)*. Because the sheriff and deputy
sheriff in *Tinney* were being sued for damages based upon claims of
conversion and trespass, and not for injunctive relief, the court
found that they were entitled to sovereign immunity from the state
law claims.

Plaintiffs cite two Alabama Supreme Court cases in their
effort to defeat Sheriff Durham's sovereign immunity claims. See
*Destafney v. University of Alabama, 413 So.2d 391(Ala.1982)*(defense
of sovereign immunity afforded university and its president did not
extend to employee whose alleged tortious act was the basis of the
claim), and *Lumpkin v. Cofield, 536 So.2d 62(Ala.1988)*(defense of

sovereign immunity does not bar suits against state officers and employees for torts committed willfully, maliciously, and outside the scope of their authority).  In *McMillian*, although the Eleventh Circuit acknowledged both of these cases, it nonetheless found that *Tinney* was binding.  This court must follow the Eleventh Circuit in *Tinney* and *McMillian*.  On the basis of this binding authority, this court therefore finds that Sheriff Durham is entitled to sovereign immunity in his individual capacity, even for those claims alleging malicious or intentional wrongdoing.

Without immunity, Sheriff Durham would still be entitled to summary judgment regarding plaintiffs' state law claims.  Each and every of plaintiffs' claims alleging negligence/wantonness, invasion of privacy, trespass, conversion, outrage, assault, and battery are without colorable merit.  This court will briefly discuss each claim under Alabama law in turn.

### Assault and Battery Claims

If plaintiffs characterize as "assault" Sheriff Durham's threat of force in response to Katherina's display of arms, they could not be more mistaken.  Indeed Sheriff Durham's stern words may have saved Katherina's life, because he and the other officers would undoubtedly have been entitled to protect themselves by force had she attempted to fire her shotgun.  Also, although plaintiffs' complaint alleges battery, absolutely no deposition testimony

7                                    CV-97-AR-1284-E

supports such a claim.  Plaintiffs describe no striking, hitting, pushing, arm-twisting, or other battering of any kind.  It is clear that no battery occurred on the night in question.

## Outrage Claim

Plaintiffs' claim of outrage is equally without basis. Alabama law defines the tort of outrage as "conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *American Road Service Company v. Inmon, 394 So.2d 361, 365 (Ala.1981)*. The Alabama Supreme Court later explained that under the *Inmon* standard, to present a jury question on the tort of outrage "the plaintiff must present sufficient evidence that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Thomas v. BSE Indus. Contractors, Inc., 624 So.2d 1041, 1043 (Ala.1993)*.   The Eleventh Circuit has recognized and adopted this standard set by the Alabama Supreme Court.  See, e.g., *Peterson v. BMI Refractories, 132 F.3d 1405 (11th Cir.1998)*.

It is unclear which particular actions by Sheriff Durham are considered "outrageous" by plaintiffs.  Whatever they intend, they have presented no evidence to suggest that Sheriff Durham's

8

intention was anything other than to apprehend and arrest Melvin in an orderly, peaceful, and safe manner.  Reasonable people in a civilized society must be expected to "endure" the lawful arrest of a family member suspected of attempted murder; only unreasonable persons pick up shotguns and threaten multiple law enforcement officers when such arrests are made.  Sheriff Durham committed no extreme or outrageous conduct, either intentionally or recklessly, and if plaintiffs have suffered severe emotional distress as a result of Melvin's lawful arrest, they must blame it on persons other than the Sheriff.  In short, plaintiffs' claim against Sheriff Durham for the tort of outrage is wholly without merit.

## Conversion Claim

Likewise, despite plaintiffs' desire to have their guns and ammunition returned, they cannot make out a claim for the tort of conversion out of a lawful seizure of weapons pursuant to a valid search warrant.  On the basis of his belief that the gun used to shoot Tranzie Loveless was somewhere on the Thomas' property, Sheriff Durham obtained a search warrant and searched said property. *Def.'s Exh.* 7. Numerous guns and ammunition were seized, and an inventory listing all items was prepared.  *Def's Exh. 8.* Plaintiffs have not alleged that additional property, not listed on the inventory list, was taken by Sheriff Durham.  It is uncontested that the Sheriff has retained custody of the seized weapons, but

9                    CV-97-AR-1284-E

only under the authority of the District Attorney, who determined that the guns should be held until Melvin Thomas has exhausted his appeals.[3]   *Def.'s Exh. 4, Depo. of Sheriff Durham, p. 31.* Plaintiffs' items were lawfully searched, seized, and held.   There has been no conversion.

## Trespass Claim

Plaintiffs' trespass claim against Sheriff Durham is also without merit.   Plaintiffs are going downhill.   Under Alabama law, "Trespass is the <u>unlawful or wrongful</u> interference with the possession of another; the gist of the action being the disturbance of the possession," *Cox v. Stuart, 157 So. 460, 462 (Ala.1934)* (emphasis added), quoting *Pollard v. Pollard, 207 Ala. 270, 92 So. 488, 490 (1922)*.   Clearly Sheriff Durham's entrance onto the Thomas property was neither unlawful nor wrongful, because he entered upon the land to arrest Melvin for a shooting which had occurred only a short while before.   Sheriff Durham was enforcing the law, not breaking it.   No trespass occurred.

---

[3]

Melvin Thomas was convicted of attempted murder for the shooting of Tranzie Loveless and is currently serving a 30-year prison term.

10                          CV-97-AR-1284-E

## Invasion of Privacy

Sheriff Durham concedes that "[i]t is well settled that Alabama recognizes that the wrongful intrusion into one's private activities constitutes a tort for invasion of privacy." *Alabama Electric Co-operative, Inc. v Partridge, 284 Ala. 442, 225 So. 2d 848 (1969).* This court agrees with Sheriff Durham's analysis, which cites *Hogin v. Cottingham, 533 So. 2d 525, (Ala.1988)("Hogin")*, and this court also fails to see how Sheriff Durham's actions on the night in question constitute an invasion of plaintiffs' privacy. However, under *Hogin*, even if plaintiffs' privacy was invaded, such invasion would have to be "wrongful," defined as an "<u>intentional interference</u> with another's interest in solitude or seclusion, either as to his person or to his private affairs or concerns." *Id., at 531. (quoting W. Prosser & W. Keeton, The Law of Torts, p. 851 (5th ed. 1984)("Prosser"))*(emphasis added). Furthermore, "[t]here must be something in the nature of prying or intrusion," and "the intrusion must be something which would be offensive or objectionable to a reasonable person. The thing into which there is intrusion or prying must be, and be entitled to be, private." *Id.* (quoting *Prosser* at 855). As stated above, plaintiffs have presented absolutely no evidence to suggest that Sheriff Durham's intention was anything other than to apprehend and arrest Melvin Thomas in an orderly, peaceful, and safe manner. Plaintiffs have failed utterly to demonstrate that

11                                    CV-97-AR-1284-E

Sheriff Durham had any intention or made any attempt to "pry" or "intrude" into plaintiffs' private affairs.  He did nothing of the sort which might be deemed "offensive or objectionable" to the reasonable person.  Like her other claims, plaintiffs' claim of invasion of privacy is without merit.

Negligence/Wantonness Claim

It is unclear how plaintiffs intend to prove a negligence claim when they have not stated one.  Perhaps plaintiffs intend to argue that they have been negligently harmed by some undefined alleged transgression of Alabama law by Sheriff Durham.  If that is the case, then plaintiffs' claim fails, not only because Sheriff Durham is immune, but also because this court has already found that the other claims under state law are without merit, and so no harm has occurred upon which a negligence claim might be grounded.  In the alternative, plaintiffs may intend to contend that Sheriff Durham's alleged violations of his constitutional duties create a harm per se, upon which a negligence claim could be grounded.  This would constitute an attempt by plaintiffs to replicate § 1983 liability through the creation of a new cause of action under Alabama tort law.  If this is plaintiffs' theory, plaintiffs would transform every cause of action pursuant to statute into a simultaneous state tort claim.  However, plaintiffs cite no cases authorizing this court to countenance such a circumvention of §

12

1983, and the court is reluctant to do so. In any event, for reasons discussed below, this court finds that Sheriff Durham has not breached any constitutional duty. Therefore, however plaintiffs plan to muster a negligence claim, this court concludes that they have suffered no harm upon which a negligence claim can be grounded.

For the reasons discussed above, the court therefore finds that Sheriff Durham is immune from suit under Article I § 14 of the Alabama Constitution. However, assuming *arguendo* that sovereign immunity does not pertain, then each and every one of plaintiffs' claims under state law nevertheless fails on the merits.

## IV.  Unlawful Search and Seizure Claims

In addition to plaintiffs' tort claims under Alabama law, they also allege liability pursuant to § 1983 due to violations of their rights to be free from unlawful search and seizure under the Fourth and Fourteenth Amendments. In particular, plaintiffs allege that Sheriff Durham directed the officers under his authority to search plaintiffs' barn and house trailer without a search warrant, despite plaintiffs' insistence that a search warrant was required. It is undisputed that the later search, conducted after Melvin Thomas and both plaintiffs had left the property, was executed on the basis of a valid search warrant. It is also undisputed that no items were seized prior to the execution of that latter search.

13

On the basis of the evidence presented by plaintiffs themselves, it remains unclear whether any search actually occurred while plaintiffs remained on the property.  Plaintiffs insist that after Melvin's arrest two officers briefly entered the barn to look for his shotgun.  Once plaintiffs demanded to see a search warrant, Sheriff Durham apparently called the officers out of the barn. This sequence occurred within a short span of time, perhaps only a minute or two.  After Sheriff Durham informed Lorena, a minor, that she would need to stay elsewhere, she was accompanied by officers into her house trailer while she gathered belongings.  Plaintiffs additionally allege that this accompaniment constituted a warrantless search.  However, in deposition testimony Lorena admits that she did not witness the officers actively searching while in the house, nor did she witness the seizure of any items.   In her opinion, no "search" occurred while the officers were in the house.[4] *Pl.'s Exh. 2.*

---

[4]

   Lorena's deposition testimony appears to admit that she saw no search conducted while she remained at the house on the evening in question, leading to the inference that a search was conducted only after Katherina and Lorena left the house and after the search was obtained.   Lorena's affidavit, See *Pl.'s Exh. 2*, states that her deposition referred only to not being present when the later, admittedly valid search was conducted.  Sheriff Durham argues that Lorena has thereby admitted that no warrantless search at all was witnessed, that her affidavit is intended merely to fabricate a factual dispute in order to survive summary judgment, and that the court is therefore entitled to disregard her later statement as sham.  However, this court is obligated to give Lorena the benefit

Clearly there remains a factual dispute as to whether a search occurred prior to obtaining a valid search warrant. Viewing matters in the light most favorable to the non-moving parties, this court must assume for purposes of summary judgment that a warrantless search was performed. However, that determination does not settle the matter for purposes of summary judgment. The fact that a warrantless search may have occurred is only material if plaintiffs can demonstrate that such a search, given the circumstances, was a deprivation of their Fourth Amendment rights.

Sheriff Durham argues that warrantless searches and seizures do not violate the plaintiffs' constitutional rights where probable cause coexists with exigent circumstances, and in support of this proposition he cites *United States v. Pantoja-Soto, 739 F.2d 1520, 1523 (11th Cir. 1984), cert. denied, 470 U.S. 1008 (1985)*. The court agrees with this statement of the law. In the present case, plaintiffs admit that "probable cause existed for Sheriff Durham to believe that a search of Katherina Thomas' home would uncover evidence of a crime." *Pl.'s Brief in Opposition to Defendant's Motion for Summary Judgment, p. 11.* After the shooting at the Loveless residence, Melvin Thomas was seen running from the scene toward his home, carrying the weapon used in the crime. When

---

of the doubt when considering a motion for summary judgment. Her affidavit could be taken to adequately explain the apparent discrepancy between an earlier statement that no search was witnessed and a later statement that a search was indeed witnessed.

Sheriff Durham arrived at the Thomas property only a short time thereafter, Melvin did not have the gun in his possession. Unless some third party had carried the gun away from the premises, the gun was clearly nearby. Probable cause surely existed.

Under *Patajo-Soto*, therefore, the relevant issue in the present case is whether exigent circumstances existed, which, when considered in combination with probable cause, would have permitted Sheriff Durham to execute a valid search without a warrant. As a matter of law, this court finds on the undisputed facts that exigent circumstances did exist at the time of Melvin's arrest. Katherina unsuccessfully attempted to deceive Sheriff Durham by asserting that Melvin had not left the property for hours prior to his arrest, which Sheriff Durham knew to be false. This gave Sheriff Durham reason to believe that Katherina knew of Melvin's criminal activities and was attempting to protect him from prosecution. Sheriff Durham therefore had reason to fear that Katherina might hide or destroy evidence. In addition, he did not know whether additional persons were present on the property who might pose a threat. After Katherina retrieved a shotgun from her house and threatened the officers, Sheriff Durham reasonably became more cautious. Because Lorena had witnessed both the agitating confrontation between her mother and the officers, as well as the arrest of both her parents, Sheriff Durham likewise had good reason to take precautions that Lorena did not become a threat or did not

16

attempt to protect her parents by destroying evidence.  Therefore, despite the fact that both Melvin and Katherina had been arrested and removed from the premises, exigent circumstances remained which would have justified the alleged subsequent searches.

In sum, this court is unable to make a finding that alleged warrantless searches did occur.  However, assuming *arguendo* that the searches did occur, this court determines that, as a matter of law, such searches did not violate plaintiffs' rights, because both probable cause and exigent circumstances existed justifying searches without a warrant.

## V.  Excessive Force Claim

Plaintiffs incorrectly attribute the following cite to *Gilmere v. City of Atlanta*, which is actually quoting from *Johnson v. Glick, 481 F.2d 1028 (2nd Cir. 1973), cert. Denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)*, saying "In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  Id. at 1033.

Plaintiffs have provided no evidence whatsoever of excessive force.  Considering the above standard, this court finds that a

17                          CV-97-AR-1284-E

substantial need for the application of force was created by Katherina's act of brandishing a shotgun, loaded or not, breached or not.  She presented a threat of imminent physical harm to the officers, and they responded appropriately by counter-threatening to preemptively defend themselves.  Once the confrontation was resolved when Katherina dropped her weapon, the only force applied was the placing of handcuffs on her wrists, which was certainly not excessive.

Additionally, plaintiffs have provided no evidence whatsoever which would support a finding that Sheriff Durham's actions were made in bad faith or "maliciously and sadistically for the very purpose of causing harm."  Furthermore, whether or not Sheriff Durham conducted a warrantless search, it is preposterous to suggest, as plaintiffs do, that "[t]he Sheriff created the situation" and that "the officers provoked [Katherina] into getting the shotgun and used excessive force by pointing their weapons at her and her daughter."  *Pl.'s Brief at 8*.  Katherina created the circumstances which led to her arrest, and she alone committed any act of provocation.

## VI.  Qualified Immunity Defense

Sheriff Durham also argues that he is entitled to qualified immunity regarding plaintiffs' claims of excessive force and unreasonable search and seizure.  To overcome an assertion of qualified immunity, plaintiffs must demonstrate that Sheriff Durham's actions "violated clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)("Harlow")*. Under the standard enunciated in *Harlow*, "If the law at that time [of the alleged deprivation of rights] was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful."  *Id*.

Plaintiffs have presented no evidence of excessive force, as discussed above, in that nothing alleged by plaintiff, such as Katherina's handcuffing, could, as a matter of law, constitute excessive force.  Due to the lack of evidence alone, summary judgment is due to be granted regarding the excessive force claim. From the outset, therefore, there is no need for this court to determine the qualified immunity issue on this claim.  However, it is also certain that, because no force is reported in any deposition testimony, Sheriff Durham has not violated any "clearly

19                                CV-97-AR-1284-E

established statutory or constitutional rights" in regard to excessive force.

Plaintiffs also cannot show that Sheriff Durham violated clearly established law if the alleged warrantless searches were actually conducted. As this court has already concluded, Sheriff Durham did not require a search warrant that evening due to the clear presence of probable cause coupled with exigent circumstances. It is also the law of this Circuit that "[f]or qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Lassiter v. Alabama A & M Univ., 28 F.3d 1146, 1150 (11ᵗʰ Cir.1994) (en banc) ("Lassiter")*. Under the standard in *Harlow*, as clarified by *Lassiter*, no jury could reasonably conclude that "every like-situated, reasonable" sheriff would necessarily believe a warrant was required for the alleged searches and seizures.[5] Therefore Sheriff Durham is surely

---

[5]

It is irrelevant that Sheriff Durham believed that circumstances on the night in question did not rise to a level of exigency sufficient to justify a warrantless search. Determinations of exigency in a case such as this one are a matter of law, not fact, *See, e.g., Hancock v. Dodson, 958 F.2d 1367, 1375 (6thᵗʰ Cir.1992)*("[W]here the underlying facts are essentially undisputed, and where a finder of fact could reach but one conclusion as to the existence of exigent circumstances, the issue

entitled to qualified immunity regarding this claim.  Absent such immunity, however, Sheriff Durham would nonetheless be entitled to summary judgment, because, as discussed above, plaintiffs have failed, as a matter of law, to present evidence sufficient to allow a reasonably jury to find in their favor.

### VII.  Conclusion

For the reasons stated in this opinion, the court finds that summary judgment is due to be granted for Sheriff Durham, and all of the potpourri of claims by plaintiffs are due to be dismissed. Accordingly, a separate and appropriate order will be entered.

DONE this $\underline{17}$ day of September, 1998.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

---

may be decided by the trial court as a matter of law"), and this court considers the objective circumstances surrounding the alleged searches, not Sheriff Durham's own subjective appraisal of matters, in determining whether there existed exigent circumstances on that particular night out of which plaintiffs' claims arise.

21                                           CV-97-AR-1284-E